UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § § § § | |
| Plaintiff, | § § | |
| v. | § § | EP-14-CR-240-DCG |
| LESLIE BURK and TREBLE CLEF TECHNOLOGIES LLC, | § § § | |
| Defendants. | § § § | |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RECONSIDERATION

On this day, the Court considered Plaintiff United States of America's ("Government" or "United States") "Motion to Reconsider Appointment of Publicly Funded Counsel for Defendant Leslie Burk, Vacate Appointment of Publicly Funded Counsel for Defendant Treble Clef Technologies, LLC, or in the Alternative to Inquire into Joint Representation" ("Motion for Reconsideration") (ECF No. 36), filed April 7, 2014.  After due consideration, the Court enters the following order.

### BACKGROUND

On February 12, 2013, a grand jury sitting in the Western District of Texas, El Paso Division, handed down a one-count wire fraud indictment against Defendants Leslie Burk ("Burk") and Treble Clef Technologies, LLC ("TCT").  *See* Indictment, ECF No. 1.

On February 25, 2014, Burk was arrested and filled out a Criminal Justice Act ("CJA") Financial Affidavit indicating he was unable to afford counsel.  *See* CJA Affidavit, ECF No. 19.

On February 26, 2014, Burk appeared before the Honorable United States Magistrate Judge Miguel A. Torres who appointed the Federal Public Defender's Office to represent Burk in this matter. *See* Order Appointing Burk FPD, ECF No. 15. Also on February 26, 2014, Assistant Federal Public Defendant Edgar Holguin, entered a Notice of Attorney Appearance for Burk. *See* Notice of Attorney Appearance, ECF No. 18.

On March 4, 2014, TCT, through Burk, appeared before the Honorable United States Magistrate Judge Norbert J. Garney, who also appointed Assistant Federal Public Defender Edgar Holguin to represent TCT in this matter. *See* Order Appointing TCT FPD, ECF No. 26.

On April 7, 2014, United States filed the presently considered Motion for Reconsideration. Therein, the Government requests that the Court vacate both the February 24, 2014, order appointing publicly funded counsel to Defendant Burk and the March 4, 2014, order appointing publicly funded counsel to Defendant TCT. *See* Pl.'s Mot. for Recons. 1.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 59 provides that a "district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense [and] . . . . [t]he district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59. The appointment of publicly-funded counsel is a non-dispositive matter. As such, the Court will vacate an order appointing counsel only upon a finding that it is "contrary to law or clearly erroneous." *Id.*

## DISCUSSION

Plaintiff seeks reconsideration of both: (I) a March 4, 2014, order appointing publicly funded counsel to Defendant TCT, and (II) a February 24, 2014, order appointing publicly

funded counsel to Defendant Burk. Plaintiff's objections to each order are addressed individually below.

## I.  Appointment of Publicly-Funded Counsel to Defendant TCT

Plaintiff, first, objects to a March 4, 2014 order, rendered by United States Magistrate Judge Norbert J. Garney, appointing publicly funded counsel to represent Defendant TCT. The order provides, in relevant part, that "the Federal Public Defender of this District is hereby appointed, pursuant to the Criminal Justice Act, to represent . . . Defendant [TCT] in this case." Order Appointing TCT FPD 1. Plaintiff requests that the Court vacate the order because the Criminal Justice Act permits the appointment of publicly funded counsel only to natural "persons . . . [and] makes no mention of corporations, LLCs, or other business organizations." Pl.'s Mot. for Recons. 4–5. Defendant TCT disagrees, arguing that the use of the term "person" in the Criminal Justice Act is intended to refer to both natural persons and corporations and it is, therefore, entitled to the appointment of counsel to assist in its defense. *See* Defs.' Resp. 3.

As correctly noted by Defendant, the applicability of the Criminal Justice Act to a corporate defendant is an issue of first impression in the Fifth Circuit. *Id.* However, the Court notes that every other court to address the issue has concluded that corporations are not entitled to the appointment of publicly funded counsel pursuant to the Criminal Justice Act. *See United States v. JB Tax Prof'l Servs., Inc.*, Crim. A. No. 13-CR-127, 2013 WL 6004047, at *1 (E.D. La. Nov. 13, 2013) ("There is general consensus that CJA funds are not available to fund the defense of an indigent corporation").[1]

---

[1] *See also United States v. Hartsell*, 127 F.3d 343, 350 (4th Cir. 1997) ("[N]either the Sixth Amendment to the United States Constitution nor the Criminal Justice Act provides that counsel must be appointed, at public expense, to represent a corporation . . . ."); *United States v. Unimex, Inc.*, 991 F.2d 546, 550 (9th Cir. 1993) ("The Sixth Amendment accordingly does not provide for appointment of counsel for corporations without sufficient assets to retain counsel on their own. Although authority is scarce, we conclude from context that the CJA does not so provide either."); *United States v. Chaudary*,

Notwithstanding this general consensus, upon an independent analysis of the matter, the Court notes that three sources of authority arguably authorize the appointment of publicly funded counsel to represent a corporate defendant: (A) the Sixth Amendment's constitutional guarantee to effective assistance of counsel, (B) the statutory authority to appoint publicly-funded counsel contained in the Criminal Justice Act, 18 U.S.C. 3006A, *et seq.*; and (C) the Court's inherent authority to ensure the fair and efficient administration of justice. Each of these grants of authority is individually addressed below.

### A. Corporate Entities are not Entitled to a Court-Appointed Attorney Pursuant to the Sixth Amendment

The Sixth Amendment to the United States Constitution provides as follows:

> *In all criminal prosecutions, the accused shall enjoy* the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have *the Assistance of Counsel for his defence.*

U.S. Const. amend. VI (emphasis added). At issue is the extent to which the Sixth Amendment's guarantee — that "'the accused shall enjoy the right . . . to have the Assistance of Counsel for his

---

Crim. A. No. 12-20123-CM, 2012 WL 5877414, at *2 (D. Kan. Oct. 30, 2012) *adopted by,* 2012 WL 5876698 (D. Kan. Nov. 20, 2012) ("Neither the Sixth Amendment to the United States Constitution nor the Criminal Justice Act (CJA) provides for the appointment of counsel to represent a corporation in criminal proceedings."); *United States v. Rocky Mountain Corp.,* 746 F. Supp. 2d 790, 800 (W.D. Va. 2010) *aff'd sub nom.,* 442 F. App'x. 875 (4th Cir. 2011) ("Congress has not provided for the expenditure of Criminal Justice Act funds for the defense of corporations."); *Associated Builders Corp. v. United States,* Crim. A. No. 01-D-654-S, 2001 WL 1191144, at *1 (M.D. Ala. Oct. 10, 2001) ("The court has found no authority either permitting or requiring appointment of counsel for a corporate defendant in circumstances such as those before the court."); *United States v. Rivera,* 912 F. Supp. 634, 638 (D.P.R. 1996) ("[C]orporations cannot be imprisoned, so they have no constitutional or § 3006A right to appointed counsel"); *Mid-Cent./Sysco Food Servs., Inc. v. Reg'l Food Servs., Inc.,* 755 F. Supp. 367, 368 (D. Kan. 1991) ("The court finds no authority which would support the appointment of counsel for Regional Food Services in this case and therefore declines to do so."); *United States v. Hoskins,* 639 F. Supp. 512, 514 (W.D.N.Y. 1986) *aff'd,* 875 F.2d 308 (2d Cir. 1989) ("Furthermore, indigent corporate defendants cannot be assigned counsel by the court or provided with copies of documents using funds available under the Criminal Access to Justice Act.").

defence'"— applies to a corporate defendant. *Texas v. Cobb*, 532 U.S. 162, 166 (2001) (quoting U.S. Const. amend. VI). While the "amendment describes the class of persons protected by its terms with the word 'accused[,' t]his language does not suggest that the protection of [S]ixth [A]mendment rights is restricted to individual defendants." *United States v. Rad-O-Lite of Phila., Inc.*, 612 F.2d 740, 743 (3d Cir. 1979). A corporation, like an individual, may stand accused of a crime and "an accused has no less of a need for effective assistance due to the fact that it is a corporation. The purpose of the guarantee is to ensure that the accused will not suffer an adverse judgment or lose the benefit of procedural protections because of ignorance of the law." *Id.* at 743 (citing *Powell v. Alabama*, 287 U.S. 45, 68–69 (1932)). As such, it is generally understood that "the [Sixth Amendment's] guarantee of effective assistance of counsel applies to corporate defendants" as well as individuals. *Id.*; *see also Unimex*, 991 F.2d at 549 ("a corporation has a Sixth Amendment right to be represented by counsel").[2] A corporation's "right to counsel [,however,] does not precisely mirror . . . [an] individual's right to counsel." *Rocky Mountain Corp.*, 746 F. Supp. 2d at 800. A "corporation's Sixth Amendment right in a criminal trial is its right to *retain* counsel while an individual's Sixth Amendment right includes the right to *appointed* counsel. Unlike an individual, a corporation cannot have what it cannot afford." *Id.* (emphasis added). Consequently, "a corporation's Sixth Amendment right to counsel distills to two components: (1) its right to choose counsel it can afford, and (2) . . . the proscription of governmental interference or the application of rules that degrade counsel's effectiveness in

---

[2] *See also Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 (D.C. Cir. 1984) ("an individual or entity may in fact be denied the most fundamental elements of justice without prompt access to counsel"); *United States v. Kilpatrick*, 594 F. Supp. 1324, 1350 (D. Colo. 1984) *rev'd*, 821 F.2d 1456 (10th Cir. 1987) *aff'd sub nom.*, *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) ("The guarantees of the Sixth Amendment apply to corporate defendants with the same force as to individual defendants.").

ways the Constitution would not tolerate if an individual were charged with an offense." *Id*. at 799–800.

The reason for this asymmetry between a corporate and an individual right to counsel can be traced back to the purposes and justifications that initially motivated the recognition of a right to court-appointment of counsel. The United States Supreme Court first recognized a categorical right to the appointment of counsel[3] in its 1938 *Johnson v. Zerbst* decision which construed the Sixth Amendment's guarantee that "'the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence' . . . to mean that in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived." *Gideon v. Wainwright*, 372 U.S. 335, 339–40 (1963) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938); quoting U.S. Const. amend. VI). Specifically, in *Zerbst*, the Court explained that: "The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to *deprive an accused of his life or liberty* unless he has or waives the assistance of counsel." *Zerbst*, 304 U.S. at 463 (emphasis added). Thus, the Court went on to explain, "the humane policy of the modern criminal law . . . provides that a defendant . . . if he be poor . . . may have counsel furnished him by the state." *Id*. Three decades later, in *Gideon v. Wainwright*, the Court held that the right to counsel recognized in *Zerbst* was fundamental and, therefore, incorporated by the Fourteenth Amendment's due process clause against the states. *See Gideon*, 372 U.S. at 335.

Based upon the holdings in *Zerbst* and *Gideon*, whether a defendant faced the potential for a loss of his "life or liberty" upon conviction in a criminal proceeding became the 'dividing

---

[3] Prior to 1938, courts engaged in an ad-hoc 'case by case' approach to the appointment of counsel in which a defendant, at least in a capital case, was entitled to counsel if he was "incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy or the like . . ." *Powell*,  287 U.S. at 71.

line' to assess whether he is entitled to court-appointed counsel pursuant to the Sixth

Amendment. *See Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N. C.*, 452 U.S. 18, 25 (1981)

("The pre-eminent generalization that emerges from this Court's precedents on an indigent's

right to appointed counsel is that such a right has been recognized to exist only where the litigant

may lose his *physical* liberty if he loses the litigation.") (emphasis added).[4] Indeed, the Supreme

Court stated explicitly in *Scott v. Illinois* that "the central premise . . . that actual imprisonment is

a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound

and warrants adoption of actual imprisonment as the line defining the constitutional right to

appointment of counsel." *Scott v. Illinois*, 440 U.S. 367, 373 (1979).

    The Supreme Court's opinion in *Argersinger v. Hamlin*, 407 U.S. 25 (1972) — the

precedent relied upon in *Scott v. Illinois*— provides a useful explication regarding the

relationship between imprisonment and the Sixth Amendment right to the appointment of

---

[4] For more cases noting that the right to appointed counsel is triggered only when a defendant faces a loss of life or liberty, *see, e.g., Renshaw v. Renshaw*, Civ. A. No. 00-CA-05, 2000 WL 1528635, at *1 (Ohio Ct. App. Oct. 12, 2000) ("we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty."); *Russell v. Armitage*, 166 Vt. 392, 405, 697 A.2d 630, 639 (1997) ("The United States Supreme Court has held that the right to appointed counsel arises 'only where the litigant may lose his physical liberty if he loses the litigation.'" (quoting *Lassiter*, 452 U.S. at 25)); *Turner v. Rogers*, 131 S. Ct. 2507, 2517, 180 L. Ed. 2d 452 (2011) ("We believe those statements are best read as pointing out that the Court previously had found a right to counsel '*only*' in cases involving incarceration, not that a right to counsel exists in *all* such cases"); *Glover v. Johnson*, 75 F.3d 264, 269 (6th Cir. 1996) ("The Court emphasized that counsel is required only when the party has an interest in his or her own 'personal freedom.'"); *McKinstry v. Genesee Cnty. Circuit Judges*, 669 F. Supp. 801, 804 (E.D. Mich. 1987) ("'In sum, the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered appointed counsel; and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.'" (quoting *Lassiter*, 452 U.S. at 25)); *Mastin v. Fellerhoff*, 526 F. Supp. 969, 972 (S.D. Ohio 1981) ("'an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.'" (quoting *Lassiter*, 452 U.S. at 25)); *Iraheta v. Superior Ct.*, 70 Cal. App. 4th 1500, 1505, 83 Cal. Rptr. 2d 471, 474 (Cal. Ct. App. 1999) ("In *Lassiter*, the United States Supreme Court reviewed the historical underpinnings of the right to counsel premised on the due process clause and recognized the general rule that the right to appointed counsel attaches only when there is a risk of loss of physical liberty."); *Clark v. Superior Ct. (Cnty. of Orange)*, 62 Cal. App. 4th 576, 581 (Cal. Ct. App. 1998) ("The bottom line is that the only *absolute* rule requiring free counsel at public expense is when there is a risk of loss of 'physical liberty.'").

counsel. *Id.* at 373–74. In *Argersinger*, the Court rejected the notion that "an indigent . . . had no right to court-appointed counsel, on the ground that the right extends only to trials 'for non-petty offenses punishable by more than six months imprisonment'" noting that "'the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter . . . '" *Argersinger*, 407 U.S. at 37 (citing *Baldwin v. New York*, 399 U.S. 66, 73 (1972)). Though the majority opinion, written by Justice Douglas, held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial," the Court also explicitly declined to extend the right to criminal prosecutions "where there is no prospect of imprisonment," an outcome advocated by Justice Powell in his concurrence. *Id.* at 37. Thus, the Court explained:

> The fact that traffic charges technically fall within the category of 'criminal prosecutions' does not necessarily mean that many of them will be brought into the class where imprisonment actually occurs. . . . The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy.

*Id.* at 40. This well recognized distinction between proceedings that risk a loss of life or liberty and those that do not renders the constitutional right to appointment of counsel inapplicable to corporations because, "[b]eing incorporeal, corporations cannot be imprisoned, [or face a loss of liberty] so they have no constitutional right to appointed counsel." *Unimex*, 991 F.2d at 550; *see also Rivera*, 912 F. Supp. at 638 ("[C]orporations cannot be imprisoned, so they have no constitutional . . . right to appointed counsel").

As such, a corporation seeking the appointment of publicly-funded counsel to assist in its criminal defense must find authority for the appointment outside of the Sixth Amendment. Defendants do not disagree with this aspect of the Court's conclusion. *See* Defs.' Resp. 6

(Defendants concede that "the Sixth Amendment right to effective assistance of counsel requiring appointed counsel extends only to persons sentenced to a term of imprisonment"). Defendants do argue, however, that a corporation is entitled to the appointment of publicly funded counsel pursuant to the Criminal Justice Act (CJA).

### B. The Criminal Justice Act does not Authorize the Appointment of Counsel to a Corporate Entity

As noted above, Defendants do not dispute the principle that because corporations cannot be imprisoned, the Sixth Amendment's guarantee to the effective assistance of counsel does not authorize the appointment of publicly funded counsel to assist in the defense of a corporate defendant. Rather, Defendants argue that, the inapplicability of the Sixth Amendment notwithstanding, section 3006A(a)(1)(A) of the Criminal Justice Act, 18 U.S.C. § 3006A *et. seq.*, authorizes the appointment of publicly funded counsel to corporate defendants in the present case. As such, Plaintiff's motion for reconsideration and Defendants' response present, primarily, a dispute over the appropriate construction of 18 U.S.C. § 3006A(a)(1)(A).

The parties' dispute can be broadly summarized as follows: United States advances a reading of § 3006A(a)(1)(A) that authorizes the appointment of publicly funded counsel to a criminal defendant only when the defendant is entitled to representation pursuant to the guarantees of the Sixth Amendment. In opposition, Defendants assert that "the CJA['s] [application] is broader than simply ensuring that the Sixth Amendment right to appointed counsel is protected." Defs.' Resp. 6. In fact, it demands the appointment of publicly funded counsel to a financially eligible criminal defendant *even if* that defendant would not be entitled to such an appointment pursuant to the Sixth Amendment alone. *Id.*

Upon a review of the legislative history of the Criminal Justice Act of 1946, its subsequent amendments, and a contextual analysis of the text of the Act in its modern day form,

the Court finds no support for Defendants' proposed reading of section 3006A(a)(1)(A).  Rather, it concludes that the CJA is most appropriately understood as an administrative act that seeks only to ensure the compensation of attorneys appointed pursuant to the Sixth Amendment. Because the Sixth Amendment does not permit the appointment of publicly-funded counsel to corporate defendants neither can the CJA; thus, the CJA provides the Court with no independent authority to appoint counsel not authorized by the Sixth Amendment.

### 1. A Review of the Legislative History of § 3006A(a)(1)(A) Evidences an Ongoing Congressional Intent to Limit its Application to Natural Persons

Prior to 1964, attorneys appointed by the Court to aid in the defense of indigent criminal defendants "render[ed] . . . their legal services *pro bono publico*."  Dudley B. Bonsal, *The Criminal Justice Act-1964 to 1976*, 52 Ind. L.J. 1, 135 (1976).  However, the *pro bono* "assignment system [soon] prove[d] inadequate to handle the increasing demand" for court appointed counsel.  *Id.*  In response, Congress passed the Criminal Justice Act of 1964, which amended the United States Code "by adding to Title 18, immediately after Section 3006, a new section, 3006A, entitled 'Adequate Representation of Defendants.'"  *See* John S. Hastings, *Criminal Justice Act of 1964*, 57 J. Crim. L. Criminology & Police Sci. 4, 426 (1966).  The purpose of the legislation, as stated in the title to the Act, is: "[t]o promote the cause of criminal justice by providing for the representation of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts of the United States."  *Id.*  The final version of the bill read as follows:

> (a) CHOICE or PLAN.—Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for *furnishing representation for defendants charged with felonies or misdemeanors, other than petty offenses as defined in section 1 of this title*, who are financially unable to obtain an adequate defense.

> Representation under each plan shall include counsel and investigative, expert, and other services necessary to an adequate defense. . . .
>
> (b) APPOINTMENT or COUNSEL.—*In every criminal case in which the defendant is charged with a felony or a misdemeanor, other than a petty offense, and appears without counsel, the United States commission or the court shall advise the defendant that he has a right to be represented by counsel* and that counsel will be appointed to represent him if he is financially unable to obtain counsel. . . .

18 U.S.C. §3006A (1964) (emphasis added). The CJA was first introduced in the House and its sponsors made direct reference to the Sixth Amendment right to counsel and the Supreme Court's decision in *Zerbst* as the primary justification for its passage:

> The foundation of the right to counsel is the Constitution. The sixth amendment provides that 'In all criminal prosecutions, the accused shall enjoy the right to have the Assistance of Counsel for his defence.' In 1938, in Johnson v. Zerbst (304 U.S. 458, 467–468, 58 S.Ct. 1019, 82 L.Ed. 1461), the Supreme Court held that 'compliance with this constitutional mandate is an essential jurisdictional prerequisite to a Federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right. the sixth amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty.

H.R. Rep. 88-864 (1963). In the debate leading up to the passage of the CJA, it is clear that Congress "never intended [the CJA] to change the . . . offender's [Sixth Amendment] right to counsel." *James v. Headley*, 410 F.2d 325, 330 (5th Cir. 1969). Rather, it sought merely to "set . . . standards for determining when counsel should be compensated in federal courts." *Id.* In fact, the "original proposed [CJA]" mirrored the Sixth Amendment's application and "provided for the appointment and compensation of counsel for indigent defendants 'in every criminal case in which the defendant appears without counsel.'" *Id.*

A companion bill passed by the Senate was not quite as broad in its application and restricted the CJA's scope "to felonies and misdemeanors other than petty offenses." *Id.* When

the bills were reconciled, the Senate's version was adopted.  The Conference Report provides the

following explanation for this decision:

> The bill as passed by the Senate is restricted in scope to felonies and
> misdemeanors other than petty offenses. The House version of the bill would
> cover all criminal cases, including petty offenses.  The constitutional mandate of
> the Sixth Amendment is without doubt applicable to petty offenses, but it is the
> view of the conferees that adequate representation may be afforded defendants in
> such cases without the need for providing for compensation for counsel.

Conf. Rep. 1709, U.S.Code Cong. and Admin. News (88th Cong., 2nd Sess. 1964), v. II, p. 3000.

When passing the Criminal Justice Act of 1964, Congress was not seeking to establish a

heretofore unrecognized source of authority beyond the Sixth Amendment.  Indeed, it explicitly

recognized the bounds of the Sixth Amendment's right to court-appointed counsel and restricted

the application of the CJA such that it would apply to *fewer* defendants than the Sixth

Amendment would demand, not *more* as suggested by Defendants in the present case.

After its passage, the CJA was substantively amended twice,[5] once in 1970[6] and again in

1984.[7]  Both amendments, however, sought only to ensure that the Act coincided with the

---

[5] Other revisions to the CJA concerned primarily the amount of compensation that would be provided to attorneys and provide little insight with respect to the Act's application to corporate defendants.

[6] The 1970 amendments expanded the application of the CJA in a number of ways.  Bonsal, *supra*.  First, § 3006A(a)(1) was amended to extend the CJA's application to  "any person. . . who is charged with . . .  juvenile delinquency . . ." to conform to Supreme Court precedent that extend counsel to juvenile delinquency proceedings.  *See* 18 U.S.C. §3006A(a)(1) (1970); *see also* 1970 U.S.C.C.A.N. 3982, 3955–89 ("Under the Sixth Amendment[,] . . . the distinction between civil and criminal matters, however, has become increasingly obscure where deprivation of personal liberty is involved.  See In re Gault, 87 S.Ct. 1428, 387 U.S. 1, 18 L.ED.2D 527 (1967), and Johnson v. Avery, 89 S.Ct. 747, 393 U.S. 483, 21 L.ED.2D 718 (1969)") (capitalization omitted).  Second, Congress added section 3006A(a)(2) which provides that any financially eligible person "who is under arrest" is entitled to publicly-funded counsel "when such representation is required by law."  18 U.S.C. §3006A(a)(2) (1970). This amendment was included in order to comply with the Supreme Court's rulings in *Miranda v. Arizona*, 384 U.S. 218 (1967) and *Orozco v. Texas*, 394 U.S. 324 (1969) which expanded the right to counsel to those placed under arrest.  *See* 1970 U.S.C.C.A.N. 3982, 3987 ("This requirement will bring the Act into conformity with recent decisions of the Supreme Court which require counsel for arrested persons.  Miranda v. Arizona, 86 S.Ct. 1602, 384 U.S. 218, 18 L.ED.2ND 1149 (1967); and Orozco v. Texas, 89 S.Ct. 1095, 394 U.S. 324, 22 L.ED.2ND 311 (1969)") (capitalization omitted).  Third, Congress added Section 3006A(a)(3) which provides that any financially eligible person "who is subject to revocation of parole, in

Supreme Court's expanding interpretation of the Sixth Amendment's right to counsel, not to

provide an independent statutory right to appointed of counsel.

### 2. A Contextual Analysis of the Text of § 3006A(a)(1)(A) Indicates that even if the Application of the Criminal Justice Act Reaches Further than the Sixth Amendment, it does not Extend to Corporate Defendants

Although, the legislative history of the Act indicates that Congress did not seek to use the

Act as a means of providing publicly-funded counsel to any defendant not entitled to that

---

custody as a material witness, or seeking collateral relief, as provided in subsection (g)" is entitled to publicly-funded counsel. 18 U.S.C. §3006A(a)(3)(1970); *see* Hastings, *supra* (stating that the inclusion of Section 3006A(a)(3) indicates Congress' focus on proceedings in which there is a "substantial potential for the deprivation of liberty" and concern with keeping the Act in conformance with the Supreme Court's evolving Sixth Amendment jurisprudence). Fourth, Congress included "a catch-all provision that an attorney may be appointed for needy persons for whom 'the Sixth Amendment to the Constitution requires the appointment of counsel, in a case in which he faces loss of liberty, any Federal law requires the appointment of counsel.'" *Id.*; *see also* 1970 U.S.C.C.A.N. 3982, 3955 ("Extends coverage of the Act to include those instances where judicial decisions may require the appointment of counsel, or where, in a case in which a person faces loss of liberty, any federal law requires the appointment of counsel.") (capitalization omitted).

[7] In 1986, Congress again made a number of additions to the CJA. First, Congress added Section 3006A(C) which provides for the appointment of counsel to a financially eligible persons who are "charged with a violation of probation" and Section 3006A(E) which provides for counsel "in parole proceedings." *See* H.R. REP. 99-417, 12, 1986 U.S.C.C.A.N. 6165, 6173 (stating the provisions were added to "conform[]to that of the Parole Commission and Reorganization Act of 1976" and the Supreme Court's decision in *Mempa v. Rhay*, 389 U.S. 128 (1967), holding that the Sixth Amendment requires the presence of counsel at parole and probation revocation hearings). Second, Congress added Section 3006A(F) to provide for representation for financially eligible persons "subject to a mental condition hearing under chapter 313." *See* H.R. REP. 99-417, 20, 1986 U.S.C.C.A.N. 6165, 6181 (explaining that the provision was added to conform to "the Insanity Defense Reform Act of 1984. . . to provide for representation at certain mental condition proceedings"). Third, Section 3006A(G) was added to provide for the representation of individuals held in custody as a material witness. *See* H.R. REP. 99-417, 12, 1986 U.S.C.C.A.N. 6165, 6173 (intending to clarify former Section 3006A(a)(2) permitting publicly funded counsel for individuals that have been placed under arrest). Fourth, Congress divided former section (4) which read: "for whom the Sixth Amendment to the Constitution requires the appointment of counsel or for whom, in a case in which he faces loss of liberty, any Federal law requires the appointment of counsel" into section (H), which provides for representation pursuant to the Sixth Amendment, and section (I) which provides for representation when a defendant faces a loss of liberty. 18 U.S.C. §3006A (1970). *See* H.R. REP. 99-417, 12, 1986 U.S.C.C.A.N. 6165, 6174 ("Subparagraphs (a)(1)(H) and (a)(1)(I) make no substantive change, but merely separate into two subparagraphs the provision appearing in current paragraph (a)(5)"). Finally, in a section entitled "Technical Amendments," the 1986 Amendments struck Section 3006A(1)(A)'s reference to 'misdemeanor (other than a petty offense as defined in section 1 of this title)' and inserting in lieu thereof the phrase 'Class A misdemeanor,' making the application of the section coextensive with the Sixth Amendment's right to counsel. *See* PL 99-651 (HR 3004), PL 99–651, Nov. 14, 1986, 100 Stat 3642.

representation pursuant to the Sixth Amendment, if the Act could be read to apply to some classes of defendants that are not protected by the Sixth Amendment, the text of the Act indicates that *corporate* defendants are not among them.

The CJA provides, in relevant part, that "[r]epresentation shall be provided for any financially eligible person . . ." 18 U.S.C. § 3006A(1). The Dictionary Act, 1 U.S.C.A. § 1, *et seq.* provides that when interpreting a federal statute, the word "person" includes corporations "unless the context indicates otherwise." 1 U.S.C. § 1. "'Context,' as used in 1 U.S.C. § 1, means the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts, and this is simply an instance of the word's ordinary meaning." *Rowland v. Ca. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 199 (1993). Three contextual features of 18 U.S.C. § 3006A indicate that "person" as used in that statute refers only to individuals ("natural persons") and not corporate entities: (a) the use of the phrase "financially unable persons"; (b) the inclusion of a "catch-all" provision; and (c) interpretative guidance provided by the Administrative Office of the United States Courts' Guide to Judiciary Policies and Procedures.

### a. Persons "Financially Unable" to Obtain Adequate Representation

The CJA provides that: "each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person *financially unable* to obtain adequate representation in accordance with this section." 18 U.S.C.A. § 3006A (emphasis added). "A person is 'financially unable to obtain counsel' within the meaning of subsection (b) of the CJA if his net financial resources and income are insufficient to enable him to obtain qualified counsel. In determining whether such insufficiency exists, consideration should be given to (a) the cost of providing the person and his dependents with the necessities of life, and (b) the costs of defendant's bail bond if financial

-14-

conditions are imposed, or the amount of the case deposit defendant is required to make to secure

his release on bond." *United States v. Salemme*, 985 F. Supp. 197, 201 (D. Mass. 1997) (quoting

7 Administrative Office of the United States Courts, *Guide to Judiciary Policies and Procedures,*

Appointment of Counsel in Criminal Cases § 2.03(C) (1993)).

The Supreme Court noted that the inclusion of an "inability to pay" standard indicates

that a statute is intended to apply only to natural persons because artificial entities do not sustain

a need for the "necessities of life" that is included in an "inability to pay" analysis. *Rowland*,

506 U.S. at 206 ("[B]ecause artificial entities have no use for food or the other 'necessities of

life,' Congress could not have intended the courts to apply the traditional 'inability to pay'

criterion to such entities [under §1915].").  Similarly, as noted by the Ninth Circuit, because

corporations cannot be imprisoned they would also not be subject to a "bail bond . . . to secure . .

. release" from imprisonment. *See Unimex*, 991 F.2d at 547 ("The corporation as such is an

abstraction which, since it could not be imprisoned, has no personal liberty interest at stake.").

Thus, the inclusion of an "inability to pay" standard provides contextual evidence that the

term "person" as used in the CJA does not necessarily include corporate defendants within its

meaning.  Had Congress intended the Act to apply to corporate defendants, it would have

included a phrase akin to "insolvent." *See Rowland*, 506 U.S. at  203 ("Whatever the state of its

treasury, an association or corporation cannot be said to 'lac[k] the comforts of life,' . . . [or]

life's 'necessities.' Artificial entities may be insolvent, but they are not . . . 'poor.' So eccentric a

description is not lightly to be imputed to Congress.").

### b.  The CJA's 'Catch-All Clause'

18 U.S.C. § 3006A(a)(1) identifies the categories of "financially eligible persons" that are

entitled to public representation and provides as follows:

(1) Representation shall be provided for any financially eligible person who--

(A) is charged with a felony or a Class A misdemeanor;
(B) is a juvenile alleged to have committed an act of juvenile delinquency as defined in section 5031 of this title;
(C) is charged with a violation of probation;
(D) is under arrest, when such representation is required by law;
(E) is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release;
(F) is subject to a mental condition hearing under chapter 313 of this title;
(G) is in custody as a material witness;
(H) is entitled to appointment of counsel under the sixth amendment to the Constitution;
(I) faces loss of liberty in a case, and Federal law requires the appointment of counsel; or
(J) is entitled to the appointment of counsel under section 4109 of this title.

18 U.S.C.A. § 3006A(a)(1). In *United States v. Unimex, Inc.*, the Ninth Circuit identified two

clauses in 18 U.S.C. § 3006A(a)(1) as "catch-all clauses:" § 3006A(a)(1)(H) which provides for

the appointment of publicly funded counsel to those "entitled to appointment of counsel under

the sixth amendment to the constitution" and  § 3006A(a)(1)(I) which provides for the

appointment of counsel to financially eligible persons who "face . . . [a] loss of liberty."

*Unimex*, 991 F.2d at 549 (quoting 18 U.S.C. § 3006A(a)(1)(H), (I)).  Defendants urge the court

to interpret the "catch-all" provision as exclusive of § 3006A(a)(1)'s other provisions.  In support

of this view, Defendants direct the Court to *Hess v. Cockrell*, 281 F.3d 212 (5th Cir. 2002), a

decision in which the court assessed that the "catch-all provision [included in Federal Rule of

Civil Procedure 60(b) was], meant to encompass circumstances not covered by Rule 60(b)'s

other enumerated provisions." *Id.*  The Court concludes, however, that the analysis in *Hess* is

inapplicable to § 3006A(a)(1).  The language of Rule 60(b)'s catch-all provision, section (b)(6),

is distinct from the catch-all provision included in § 3006A(a)(1) because section (b)(6)

explicitly indicates that it refers to "any *other* reason that justifies relief," meaning a reason not

already listed in the rule.  *Id.*  This exclusionary  language is not present in § 3006A(a)(1)'s

catch-all provisions, which indicate only that publicly-funded counsel is authorized in cases when demanded by the Sixth Amendment or when the defendant faces loss of liberty, leaving open the possibility that the catch all provisions are inclusive of § 3006A(a)(1)'s other provisions. In the absence of explicit textual guidance otherwise, as was the case in *Hess*, the Court applies the well-accepted rule of statutory construction which provides that "[catchall] clauses are to be read as bringing within a statute categories similar in type to those specifically enumerated." *Fed. Mar. Com'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 734 (1973) (citing 2 J. Sutherland, Statutes & Statutory Construction § 4908 *et seq.* (3d ed. 1943)). This reading is consistent with the historical development of the CJA which indicates that § 3006A's catch-all provisions were included in order to obviate the need to amend the CJA to accommodate new developments in Sixth Amendment jurisprudence. As such, § 3006A(a)(1)'s 'catch-all' provision indicates that all provisions of § 3006A(a)(1) are intended to address cases in which the defendant faces a loss of liberty or is entitled to appointment of counsel pursuant to the Sixth Amendment and, as such, excludes corporations from its purview.

### c. The Guide to Judiciary Policies and Procedures

Although not binding authority, the Administrative Office of the Courts has promulgated regulations concerning the judicial appointment of publicly funded counsel pursuant to the Criminal Justice Act in its "Guide to Judiciary Policies and Procedures" which provides that "[some C]ases or proceedings . . . are *not* covered by or compensable under the [Criminal Justice] Act include[ing]: . . . Corporate defendant cases." *See Rivera*, 912 F. Supp. at 638. This explicit exclusion of "corporate defendant cases" from the CJA's applicability indicates that the term "person" as used in that statute was intended to refer only to natural persons and not corporations.

### C. Inherent Judicial Authority to Appoint Counsel

Because the Sixth Amendment and the Criminal Justice Act do not authorize the appointment of counsel to a corporate defendant, the only source of authority that might permit the appointment of counsel to the corporate defendant in the present case is the court's inherent authority to ensure the fair and efficient administration of justice in the cases before it.

"Since its inception, the federal judiciary has maintained that federal courts possess inherent powers which are not derived from statutes or rules." *Bothwell v. Republic Tobacco Co.*, 912 F. Supp. 1221, 1225 (D. Neb. 1995) (citing *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812) ("our courts no doubt possess powers not immediately derived from statutes")); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962) (stating that inherent powers are "governed not by rule or statute"). These inherent powers vest in the courts upon their creation. *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821) ("[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates"); *Link*, 370 U.S. at 630 (inherent powers are "necessarily vested in courts to manage their own affairs"). The inherent power of federal courts has been relied upon in order to ensure fairness and efficiency in both civil and criminal matters. *See Sheppard v. Maxwell*, 384 U.S. 333, 358–363 (1966) (listing the manner in which courts has used its equitable powers to ensure fair criminal trials).[8] "Despite historical reliance on inherent powers, including Supreme Court jurisprudence dating back to 1812, the notion of inherent power has been described as nebulous, and its bounds as 'shadowy.'" *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 561 (3d Cir. 1985).

---

[8] *See also State v. Lincoln*, 825 P.3d 64 (Haw. 1992) (finding inherent power to dismiss a criminal indictment); *Wafai v. People*, 750 P.2d 37 (Colo. 1988) (finding inherent power to change venue in criminal cases); *State v. Superior Court*, 275 P.2d 887, 889 (Ariz. 1954) (finding inherent authority to oversee discovery in a criminal matter); *People v. v. Morin* 467 N.Y.S. 540 (App. Div. 1983) (finding inherent power to exclude the public in criminal cases); Anno., "Inherent Power of Court to Suspend for Indefinite Period Execution of Sentence in Whole or in Part," 73 A.L.R.3d 474, 509–509 (1976).

As noted by the Fifth Circuit, perhaps the most comprehensive and systemic analysis of the inherent powers of a federal court was conducted by the Third Circuit in its *Eash v. Riggins Trucking Inc.* decision. *See In re Stone*, 986 F.2d 898, 901 (5th Cir. 1993) ("As explained helpfully in *Eash v. Riggins Trucking*, . . . there are three general categories of inherent powers."). The *Eash* Court classified the Court's inherent authority into three categories. *Eash* at 562; *see also In re Stone*, 986 F.2d at 901. The first *Eash* category "encompasses an extremely narrow range of authority involving activity so fundamental to the essence of a court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms 'court' and 'judicial power' [included in Article III]." *Eash*, 757 F.2d at 562; *see also In re Stone*, 986 F.2d at 901–2.

The second *Eash* category includes the exercise of inherent authority that is "implied from strict functional necessity [and/or] . . . 'essential to the administration of justice.'" *Eash*, 757 F.2d at 562 (quoting *Michaelson v. U. S. ex rel. Chi., St. P., M. & O. Ry. Co.*, 266 U.S. 42, 65 (1924)); *see also In re Stone*, 986 F.2d at 902. For instance, "[a] court's power to sanction for contempt falls within this category because that power is deemed 'absolutely essential' to the functioning of the judiciary." *Bothwell*, 912 F. Supp. at 1226 (citing *Eash*, 757 F.2d at 562–63 (quoting *Levine v. United States*, 362 U.S. 610, 616 (1960))).[9]

The third, and final, *Eash* category includes those "powers necessary only in the practical sense of being useful." *Eash*, 757 F.2d at 563; *see also In re Stone*, 986 F.2d at 902 ("The third category of inherent powers includes those reasonably useful to achieve justice."). This third category is "rooted in the notion that a federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to

---

[9] *See also Michaelson*, 266 U.S. at 65 (discussing inherent power to control admission to the bar and to discipline attorneys); *Theard v. United States*, 354 U.S. 278, 281 (1957) (discussing inherent power to admit, suspend, or disbar attorneys in federal courts).

process litigation to a just and equitable conclusion." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978). This power has been exercised to appoint an auditor, counsel, technical advisers and consultants "to aid the court in decision-making." *Bothwell*, 912 F. Supp. at 1226 ("[c]ourts have . . . inherent power to provide themselves with appropriate instruments required for the performance of their duties [and to appoint] . . . persons unconnected with the court to aid judges in the performance of specific judicial duties" (quoting *Ex parte Peterson*, 253 U.S. 300 (1920))).

Applying the *Eash* categories to the matter presently considered, the Court concludes that: (1) a federal court may appoint an attorney to a natural person pursuant to the inherent power described in the first and third *Eash* categories; (2) the first and third *Eash* categories also authorize the appointment of counsel to corporate defendants; and (3) in the present case, justice demands that the Court exercise its inherent authority to appoint counsel, to represent Defendant TCT, who shall be entitled to reasonable compensation.

### 1. A Federal Court may Appoint an Attorney to a Natural Person Pursuant to the Inherent Power Described in the First and Third *Eash* Categories

"[C]ommentators have asserted that a court's inherent power to compel an attorney to represent a [defendant] . . . most readily falls into the third *Eash* category containing those equitable powers necessary to bring about a fair and just result." *Bothwell*, 912 F. Supp. at 1227 (citing Note, *Invoking the Inherent Powers Doctrine to Compel Representation of Indigent Civil Litigants in Federal Court*, 10 Rev. Litig. 769, 782 (1991); Note, *Mallard v. United States District Court: Attorney May Refuse Federal Judge's Request to Represent Civil Plaintiff Proceeding In Forma Pauperis,* 35 Vill. L. Rev. 1175, 1233 (1990)). However, "the power to conscript lawyers [may also be considered] . . . necessary . . . to protect the integrity and proper functioning of the judicial branch" as described in the first *Eash* category. *Bothwell*, 912 F.

Supp. at 1227 (citing Tigran W. Eldred & Thomas Schoenherr, *The Lawyer's Duty of Public Service: More than Charity?*, 96 W. Va. L. Rev. 367 (1993); David Luban, *Lawyering and Justice: An Ethical Study* (1988)).

### 2. The First and Third *Eash* Categories Also Authorize the Appointment of Counsel to Corporate Defendants

It is beyond dispute that, in the case of natural persons, federal courts may exercise their inherent authority to conscript counsel to represent a criminal defendant. *Powell*, 287 U.S. at 73 (opining that "[a]ttorneys are officers of the court, and are bound to render service when required by such an appointment"); *FTC v. Superior Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 453 (1990) (Blackmun, J., concurring in part, dissenting in part) (courts have inherent authority to compel attorneys to represent indigent litigants "as a condition of practicing law in the District or on pain of contempt"); *Accetturo*, 842 F.2d at 1413 ("[t]he court's responsibility for the administration of justice would be frustrated were it unable to enlist or require the services of those who have, by virtue of their license, a monopoly on the provision of such services"). The Court concludes that the same authority permits the appointment of counsel to represent a corporate criminal defendant as well. The same conclusion has been reached by the few[10] courts who have considered the question. Exercising their inherent authority, courts have: (a) appointed non-attorney members of a corporation to represent the corporation; (b) appointed an attorney to

---

[10] For cases noting the lack of case-law in this area, *see, e.g., United States v. Crosby*, 24 F.R.D. 15 (S.D.N.Y. 1959) ("This is one of those oft occurring cases where a fundamental question arises which must have been answered over and over again but where no reported decision can be found which gives the answer."); *Rivera*, 912 F. Supp. at 638 ("Following what appears to be a clear rule towards an issue which seldom arises, the Court of Appeals for the Ninth Circuit . . . has stated that neither the Sixth Amendment nor the Criminal Justice Act section providing for appointment of counsel for indigent 'persons' provide corporations with a right to appointed counsel, even if they cannot afford to retain their own").

represent a corporate defendant *pro bono*; and (c) appointed an attorney to represent a corporation and ordered that attorney's fees be paid out of the corporation's assets.

### a. A Summary of Cases Appointing Non-Attorney Representation

At least two federal courts have held "artificial entities may be represented by persons who are not licensed attorneys" and appointed a member of the corporation to represent the corporate entity. *Rowland*, 506 U.S. at 203 (citing *United States v. Reeves*, 431 F.2d 1187 (9th Cir. 1970) (partner can appear on behalf of a partnership); *In re Holliday's Tax Servs., Inc.*, 417 F. Supp. 182 (E.D.N.Y. 1976) *aff'd sub nom.*, 614 F.2d 1287 (2d Cir. 1979) (sole shareholder can appear for a closely held corporation)). The Supreme Court, however, has criticized this practice noting that: "[t]hese cases neither follow federal precedent, nor have themselves been followed." *Id.* (citing *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1309–1310 (2d Cir. 1991) (criticizing and refusing to follow *Reeves*); *Jones v. Niagara Frontier Trans. Auth.*, 722 F.2d 20, 22, n. 3 (2d Cir. 1983) (distinguishing and narrowing *Holliday's Tax Services*)).

### b. Cases Appointing *Pro Bono* Attorney Representation

Some federal courts have appointed *pro bono* counsel to represent an insolvent corporation pursuant to their inherent authority. *See, e.g., United States v. Crosby*, 24 F.R.D. 15, 16 (S.D.N.Y. 1959) ("The court must, therefore, have power to appoint one of its attorneys and officers to appear for the corporation."); *JB Tax Prof'l Servs., Inc.*, 2013 WL 6004047, at *5 ("The Court's authority to appoint counsel *pro bono* under these circumstances is an area of unsettled law . . . Nevertheless, in the interests of justice the Court will order that such an appointment take place . . ."). This power has only been exercised where an attorney voluntarily chose to represent an insolvent corporation, a situation that does not present itself here. *See*

*Crosby*, 24 F.R.D. at 16;[11] *JB Tax Prof'l Servs.*, 2013 WL 60004047, at *5 (appointing an attorney who indicated to the court his willingness to represent the corporation *pro bono*).[12]

### c. Cases Appointing Privately-Funded Attorney Representation

In *United States v. Rivera*, a case involving natural persons and corporations as co-defendants, the Court concluded "§ 3006A provides for the appointment of counsel and payment of legal representation on behalf of 'persons' [but] not . . . corporate defendants." *Rivera*, 912 F. Supp. 634, 635–7 (D.P.R. 1996). However, citing its "inherent power to appoint counsel, [and] . . . supervise the proper administration of justice" the court ordered that the corporate defendants "retain new counsel [and] . . . If new counsel ha[d] . . . not been retained . . . the [c]ourt w[ould] . . . designate [an] attorney" to represent the corporate defendants. *Id.* at 635, 640. The *Rivera* court made clear, however, that: "[the] alternative designations will *not* be made under the Criminal Justice Act . . . In the event the . . . attorneys are appointed to represent the defendants, their fees and expenses will be paid from the [corporation's] assets and properties." *Id.* at 635. Defendants, however, object to a comparable order being entered in the present case because "TCT . . . does not have the financial resources to hire an attorney." Defs.' Resp. 7.

### 3. The Court's Exercise of its Inherent Authority in the Present Case

"The applicable . . . rules and statutes leaves . . . corporate defendants in an untenable position. A corporate defendant may appear in federal court only through licensed counsel." *Chaudary*, 2012 WL 5877414, at *1. However, because "corporate defendants are not entitled to appointment of counsel, they must retain counsel to defend against the crimes charged" and the

---

[11] Two factors that render *United States v. Crosby* distinguishable from the present case: (1) the court made its decision prior to the passage of the Criminal Justice Act of 1964; and (2) the Court appointed counsel only after the corporate defendant defaulted in appearance, and upon motion by the government. *See Crosby*, 24 F.R.D. at 15 ("The corporation has been summoned . . . It has defaulted in appearance. The Government moves for the appointment for someone to represent the corporation").

[12] It is relevant to note that although *United States v. JB Tax Professional Services, Inc*, is a criminal matter, the Court appointed counsel for the purposes of a civil action arising out that criminal case which concerned the forfeiture of property and is therefore distinguishable from the present case.

corporate defendant in the present case, has "nothing with which to retain counsel." *Id.* As such, the Court is left with very few options that do not work an injustice in the present case. Because a corporation cannot appear in court without counsel, and the corporation in the present case cannot afford to retain its own counsel, failing to appoint counsel to the corporate defendant produces one of two socially undesirable and unjust results.

The first possible outcome is that the corporate defendant is, in fact, guilty of a criminal offense and will be able to evade justice merely because it is insolvent. Such an outcome produces a perverse incentive for corporations to engage in criminal behavior and then waste their assets in order to avoid being brought to justice. This is a result that other federal courts have found to be impermissible and sufficient to justify the appointment of counsel to an insolvent corporate defendant. *See United States v. Pace*, Crim. A. No. 98-CR-1247(LAP), 2000 WL 1059703, at * 1 (S.D.N.Y. Aug. 2, 2000) ("Certainly [a corporate defendant] . . . cannot stymie criminal prosecution by refusing to retain counsel").

The second possible outcome is that the corporate defendant is, in fact, innocent but will be rendered unable to appear in court to defend its innocence. This outcome, too, incentivizes malfeasance on the part of corporate co-defendants, most notably the natural persons who hold positions of authority in the corporation itself. As in the present case, corporations are often co-defendants in a lawsuit with their presidents (or other corporate agents) and one important purpose of a trial is to assess whether liability should be properly assessed against the corporation itself or whether the 'corporate veil' should be pierced and the individual agents of the corporation should, themselves, be held individually liable. If an insolvent corporation cannot even appear due to its inability to retain counsel, the corporation's co-defendants will be permitted to present the so-called 'empty chair' defense and improperly shift liability to the

-24-

absent corporation. What's more, this result creates an incentive for natural persons who might be found liable as a result of actions they have taken on behalf of a corporation to engage in the socially undesirable behavior of wastefully rendering the corporation insolvent prior to trial in order to avoid criminal liability.

Under either of the above-described outcomes of failing to appoint counsel, the Court would be unable to engage in effective fact-finding and its justice-seeking ability would subject to manipulation by savvy and self-interested corporate entities and their agents. As such, both the second and third *Eash* categories authorize the Court's use of its inherent authority to appoint counsel to represent the insolvent corporate defendant in the present case.

The third *Eash* category permits the Court to engage in actions not specifically authorized by statute or rule when doing so would be in service of "the fair, speedy and efficient disposition of cases on its criminal docket." *Bertoli*, 994 F.2d at 1016–17. These interests are manifestly served by the appointment of counsel in the present case. If no counsel is appointed, the Court would not be able to proceed with a trial and fairly assess guilt or innocence in the present case. It must, instead, be stayed for an indefinite period of time creating unnecessary delay in the administration of justice. *Chaudary*, 2012 WL 5877414, at * 2 ("[T]he corporation's options [were] . . . either entering a guilty plea to the crimes charged or proceeding to trial in absentia. . . . Accordingly, the court severed and held in abeyance the trial of the corporate defendant . . . because 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants.'" (quoting *United States v. Hall*, 473 F.3d 1295, 1302 (10th Cir. 2007))). Appointing counsel, in contrast, would "aid the court in decision-making" by permitting the corporation's interest to be considered at trial. Therefore, appointment of counsel in the present case is an unexceptional exercise of the court's inherent authority. *Bothwell*, 912 F. Supp. at

-25-

1226 ("[c]ourts have ... inherent power to provide themselves with appropriate instruments required for the performance of their duties").

An exercise of the Court's inherent authority to appoint counsel to the corporate defendant in the present case would also fall into the first *Eash* category which permits the court to engage in "activity . . . fundamental to the essence of a court as a constitutional tribunal." *Eash*, 757 F.2d at 562. Failing to appoint counsel would leave the Court unable to engage in even its most basic function: rendering judgment regarding the guilt or innocence of criminal defendants. *See Crosby*, 24 F.R.D. at 16 (holding that the fact that an unrepresented corporate defendant could not appear before the Court to receive judgment authorized the court to exercise its inherent authority to appoint counsel to represent an insolvent corporate defendant). Thus, the Court concludes that the first and third *Eash* categories authorize the appointment of counsel to the corporate defendant in the present case and the Court now to turns to an assessment of whether the counsel appointed to represent the corporate defendant shall be compensated.

The Court begins its inquiry into the matter with a consideration of Federal Rule of Criminal Procedure 43. Federal Rule of Criminal Procedure 43 "'has been understood to codify both a defendant's constitutional right and his common law right to be present throughout a trial . . .'" *Alikpo*, 944 F.2d at 209 (quoting 3A C. Wright, *Federal Practice and Procedure* § 721 (2d ed. 1982 & 1991 Supp.)). The rule "makes clear that a defendant has an absolute right to be present at the beginning of the trial." *Id.* 209. With respect to an insolvent corporate defendant, however, Rule 43 "leaves a difficult gap in the law: there is neither a provision for enforcing a summons issued to a corporate defendant . . . nor is there a provision for proceeding *in absentia*." *Cleveland v. Wash. Mut. Bank*, 179 Ohio App. 3d 692, 695 (Ohio Ct. App. 2008). However, it is relevant to note that federal courts have consistently maintained that a "defendant has no duty to

bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." *Barker v. Wingo*, 407 U.S. 514 (1972). Moreover, if an insolvent corporate defendant is unable to appear at trial because it cannot afford to retain counsel, a trial of that unrepresented corporation *in absentia* would infringe upon the corporate defendant's right to due process. *See, e.g., Rodriguez v. Quarterman*, 535 F. Supp. 2d 820, 840 (S.D. Tex. 2007) *aff'd*, 327 Fed. App'x. 466 (5th Cir. 2009) ("'[T]he presence of a defendant [at trial] is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence . . . .'" (quoting *Snyder v. Mass.*, 291 U.S. 97, 108 (1934))); *see also Alikpo*, 944 F.2d at 210 ("[C]onvening a criminal tribunal without the presence of the defendant treads precariously close to the concept of trial in absentia which our system has long disdained."). Therefore, because the trial of an unrepresented corporate defendant would violate its right to due process, and it is the State's obligation to ensure that a criminal trial proceeds in a manner "consistent with [the defendant's] due process" rights, the Court concludes that it is the obligation of the State to ensure the appearance and, therefore, representation of a corporate defendant that it wishes to prosecute in a criminal proceeding. *Barker*, 407 U.S. at 514. Thus, in the present case, should United States wish to continue the criminal proceedings against TCT, the Court will exercise its inherent authority to appoint counsel if the United States identifies funds from which appointed counsel would be compensated in either the corporate treasury or in the treasury of the United States. *See State v. Rush*, 46 N.J. 399, 408, 217 A.2d 441, 445–46 (1966) ("The Supreme Court of course did not mean that the ultimate obligation to furnish counsel reposed in the bar rather than in the State . . . it is the obligation of the State itself rather than the personal obligation of any of its officers . . . ).

Although attorneys, as members of the bar and officers of the Court, are under an ethical obligation to represent indigent criminal defendants *pro bono* when called upon to do so by the Court, the practice of requiring an attorney to perform his or her services without compensation has been criticized by both state and federal courts. Indeed, it was, in part, the risk that uncompensated counsel might be inadequately incentivized to provide effective representation to their indigent clients that motivated the passage of the CJA which allocated federal funds to compensate attorneys ordered to provide representation to indigent criminal defendants in federal court. *See* 1964 U.S.C.C.A.N. 2990, 2999 ("The representation furnished by these lawyers is necessarily inadequate. There is no provision to pay for their services or even for the expenses they incur"). As such, the Court concludes the Court's inherent authority to ensure "the fair, speedy and efficient disposition of cases on its criminal docket" and protect its "essence . . . as a constitutional tribunal" permits an order requiring the payment of adequate compensation for counsel to be appointed to represent the insolvent corporate defendant in the present case. *Eash*, 757 F.2d at 562.

## II.  The Appointment of Publicly Funded Counsel to Represent Defendant Leslie Burk

Plaintiff further requests that the Court reconsider the February 26, 2014, order issued by United States Magistrate Judge Miguel A. Torres appointing publicly funded counsel to Defendant Burk. Plaintiff objects to the appointment of counsel due to an alleged dishonesty included in his CJA 23-Financial Affidavit. Specifically, Plaintiff asserts that Burk indicated to the Magistrate Judge that "he did not know his monthly salary because he had just started his employment at "Kline Tech Consulting LLC ["KTC"].'" Pl.'s Mot. Recons. 3. However, Plaintiff argues it is in possession of evidence that "Burk represented KTC at a meeting with . . . an El Paso Bank . . . in early December 2013" nearly two months before his February 25, 2014

-28-

arrest. *Id.* Moreover, Plaintiff asserts that Burk's online profile "suggests that [he had] . . . an employment relationship with KTC dating back to 2012." Pl.'s Reply 3.  Therefore, Plaintiff avers, the Magistrate Judge was without the information necessary to correctly assess Defendant Burk's eligibility for publicly appointed counsel.  Defendant disagrees arguing that although Burk might have been imprecise when indicating that he had 'just started' his work with KTC, he was not providing incorrect information with respect to his financial eligibility for publicly appointed counsel because: "Burk works for KTC on a commission basis [thus he was being truthful when declaring that he] did not have a monthly salary to report in the Financial Affidavit." Defs.' Resp. 2.

Although Burk's declaration regarding his employment is granted a "strong presumption of verity," it is not beyond question and, in the present case, United States has raised a legitimate evidence-based concern regarding Burk's affidavit. *Blackledge v. Allison*, 431 U.S. 63, 97 (1977).  Defendants seeking publicly-appointed counsel are under an ongoing obligation to show they are entitled to publicly-funded counsel and "[t]he Court may re-examine the need for counsel at any time." *Report of the Judicial Conference of the U.S.*, 36 F.R.D. 277, 341–34 (1965); *see also United States v. Foster*, 867 F.2d 838, 841 (5th Cir. 1989).  Pursuant to that obligation, and in order aid the Court in resolving the present dispute between the parties, Defendant Leslie Burk is hereby ordered to file with Court written answers to the questions concerning Burk's employment and finances attached to this order as 'Appendix A.'

## CONCLUSION & ORDER

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff United States of America's "Motion to Reconsider Appointment of Publicly Funded Counsel for Defendant Leslie Burk, Vacate Appointment of Publicly Funded Counsel for Defendant Treble Clef Technologies, LLC,

or in the Alternative to Inquire into Joint Representation" is **GRANTED, IN PART,** and

**DENIED, IN PART.**

It is **FURTHER ORDERED** that the March 4, 2014, "Order Appointing Counsel" (ECF

No. 26) is hereby **VACATED.**

It is **FURTHER ORDERED** that **DEFENDANT TREBLE CLEF**

**TECHNOLOGIES, LCC** shall **RETAIN COUNSEL** and **ENTER AN APPEARANCE**

within fifteen (15) days of the date of this Order.

Should **DEFENDANT TREBLE CLEF TECHNOLOGIES, LLC** fail to retain

counsel, within fifteen (15) days of the date of this Order the **COURT** shall **APPOINT** counsel

to represent **DEFENDANT TREBLE CLEF TECHNOLOGIES, LLC** should **PLAINTIFF**

**UNITED STATES OF AMERICA** identify, within thirty (30) days of the date of this Order,

funds from which appointed counsel would be compensated in either the corporate treasury or in

the treasury of the United States.

It is **FINALLY ORDERED** that within fifteen (15) days of the date of this Order

**DEFENDANT LESLIE BURK** shall **FILE** with the Court written responses to inquiries

included in 'Appendix A' attached to this order.

So ORDERED and SIGNED this ____18th____ day of ____June____, 2014.

DAVID C. GUADERRAMA
**UNITED STATES DISTRICT JUDGE**

## APPENDIX A

What, if any, was Burk's relationship with Kline Tech Consulting, LLC in 2012 and 2013?

What is the current status of Burk's employment with Kline Tech Consulting, LLC?

Does Burk presently draw a salary and in what amount?

How are Burk's commissions calculated?

What is required of Burk before he receives a commission?

What, if any, future commissions does Burk contemplate?

If Burk anticipates future commissions, when does he expect to receive them?

Has Burk received any income in the past 12 months from a business, profession or other form of employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources? IF YES, give the amount received and identify the sources.

What are Burk's present sources of income?

Does Burk have any cash on hand or money in savings or checking accounts? IF YES, please list them and their value.

Does Burk maintain any investments? IF YES, please list them and their value.

Does Burk own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? IF YES, give value and description of each.